UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

HOWARD COHAN,

        Plaintiff,

v.                                         Case No: 6:23-cv-2404-WWB-DCI

MAJOR UNIVERSAL LODGING, LLC,

        Defendant.

---

ORDER

This cause comes before the Court for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **Plaintiff, Howard Cohan's, Motion for Entry of Final Default Judgment Against Defendant, Major Universal Lodging, LLC (Doc. 11)** |
| **FILED:** | **April 4, 2024** |

**THEREON** it is **ORDERED** that the motion is **DENIED without prejudice**.

I.      **Background**

On December 15, 2023, Howard Cohan (Plaintiff) filed this action against Major Universal Lodging, LLC (Defendant) alleging that Defendant is in violation of Title III of the American with Disabilities Act (ADA), 42 U.S.C. § 12182, *et seq.* Doc 1 at 1. Plaintiff is a mobility-impaired ADA "tester" residing in Palm Beach County, Florida. *Id.* at 2-5; *see also* Doc. 6 at 2; Doc. 6-2 (compiling history of Plaintiff's "tester" status). Defendant is alleged to be "[u]pon information and belief…the lessee, operator, owner, and lessor" of a property that "is a place of public

accommodation covered by the ADA" and located at 5621 Major Blvd, Orlando, FL 32819.  Doc. 1 at 2.

Plaintiff visited Defendant's premises on March 11, 2023, and August 29, 2023, and alleges that Defendant violated the ADA by denying him full and equal access to Defendant's facilities. *Id.* at 3, 16.  Plaintiff alleges that Defendant failed to comply with ADA standards concerning disability access to the premises' (1) passenger drop off area, (2) men's restroom, (3) food service area, and (4) business station.  *Id.* at 10-14.  Plaintiff claims that these ADA violations are ongoing, that he frequently travels to the Orlando area to make use of public accommodations, and that he intends to return to Defendant's premises in his individual capacity and as a "tester" to verify Defendant's ADA compliance.  *Id.* at 4-7.

### a.  Motion for Entry of Default Judgment

Plaintiff filed a return of service on January 17, 2024.  Doc. 7.  Defendant has not responded.  Plaintiff filed an Application for Clerk's Entry of Default against Defendant on February 27, 2024.  Doc. 8.  The Clerk entered default against Defendant on March 1, 2024.  Doc. 10.

### b.  Motion for Entry of Default Judgment

On April 4, 2024, Plaintiff filed a Motion for Entry of Final Default Judgment (the Motion), in which he requests declaratory and injunctive relief, including an order compelling Defendant to alter its premises to rectify the alleged ADA violations.  Doc. 11 at 7-9.  Plaintiff also requests an order directing Defendant to "evaluate and eliminate its policies, practices, and procedures" towards disabled persons and reasonable attorney fees.  *Id.* at 9.

## II.      Standard of Review

The Federal Rules of Civil Procedure establish a two-step process for obtaining default judgment.  First, when a party against whom a judgment for affirmative relief is sought fails to plead or otherwise defend as provided by the Federal Rules of Civil Procedure, and that fact is made to appear by affidavit or otherwise, the clerk enters default.  Fed. R. Civ. P. 55(a).

Second, after obtaining a clerk's default, a plaintiff must move for default judgment.  Fed. R. Civ. P. 55(b).  Before granting a default judgment, "a court must confirm that it has jurisdiction over the claims and that the complaint adequately states a claim for which relief may be granted." *Anderson v. Blueshore Recovery Sys.*, LLC, 2016 WL 1317706, at *2 (M.D. Fla. Feb. 25, 2016), *report and recommendation adopted*, 2016 WL 1305288 (M.D. Fla. Apr. 4, 2016) (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).[1]  Well-pled allegations of fact are admitted by default.  *Id.*  "A default judgment cannot stand on a complaint that fails to state a claim."  *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997) (citing *Nishimatsu Constr. Co.*, 515 F.2d at 1206) ("A default judgment is unassailable on the merits but only so far as it is supported by well-pleaded allegations, assumed to be true.").  A court must also ensure adequate service of process because a court lacks jurisdiction over a defendant who is not properly served.  *Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1317 (11th Cir. 1990).

---

[1] The Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

### III.    Discussion

#### a.    Jurisdiction

Before entering default judgment, a court must ensure it has subject matter jurisdiction over the case. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006) (courts must ensure subject matter jurisdiction).  "District courts have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.  Here, Plaintiff alleges that Defendant violated the ADA.  Doc. 1.  Accordingly, the Court finds that it has subject matter jurisdiction.

#### b.    Service of Process

Plaintiff filed a return of service on January 17, 2024.  Doc. 7.  Defendant had 21 days from the date of service to respond to the Complaint.  Fed. R. Civ. P. 12(a)(1)(A)(i).  Defendant has not appeared or otherwise defended this case.  As such, the Clerk entered default on March 1, 2024.  Doc. 10.

That said, upon application for default judgment, the Court must scrutinize service to ensure it has jurisdiction over the defendant.  *See Pardazi*, 896 F.2d at 1317.  In his Application for Clerk's Entry of Default, Plaintiff avers that service on the employee of Defendant's registered agent complied with Florida law.  Doc. 8 at 3.  Florida Statutes section 48.091(4) provides that if a registered agent is absent from their office, then service may be made on an employee of the registered agent.  *See* Fla. Stat. § 48.091(4).  Here, Plaintiff's Return of Service states that service was received by a "general manager" purportedly authorized to accept for Defendant's registered agent, an individual.  Doc. 7.  Although Plaintiff asserts that this general manager is an employee of Defendant's registered agent, Doc. 8 at 3, the Return of Service does not state as much.  *See* Doc. 7.  Additionally, the Return of Service states that service was made upon the general manager

at an address different from the address listed for Defendant's registered agent. *Id.* Thus, it is unclear whether the individual who purportedly received service on behalf of Defendant's registered agent was an employee of that registered agent.

But even if Plaintiff's Return of Service had unambiguously indicated that the individual served was an employee of Defendant's registered agent, Plaintiff has not actually alleged that the registered agent was absent from his office when service was attempted. Thus, it is not clear whether service was properly made on Defendant. *See McGlynn v. El Sol Media Network Inc.*, 2023 WL 7166667, at *1-2 (M.D. Fla. Oct. 21, 2023) (finding return of service insufficient where it did not state that the registered agent was not present at the time of service). Accordingly, Plaintiff has not sufficiently established service.[2]

### c. Standing

Standing "is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims." *Bochese v. Town of Ponce Inlet*, 405 F.3d 965, 974 (11th Cir. 2007) (quotation omitted). The Court is required to consider standing *sua sponte* even if the parties have not raised the issue, because the Court must ensure that it has jurisdiction over the case before it rules on the merits of a party's claim. *See AT&T Mobility, LLC v. NASCAR, Inc.*, 493 F.3d 1356, 1360 (11th Cir. 2007).

To have standing, a plaintiff must establish (1) an injury in-fact; (2) a causal connection between the injury and defendant's conduct, and (3) that it is likely the injury will be redressed by a favorable ruling. *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328 (11th Cir. 2013).

---

[2] The undersigned notes that the ambiguity concerning service is heightened by the vagueness of the allegations concerning the premises discussed *infra*, i.e., the allegations that "[u]pon information and belief," Defendant is the "lessee, operator, owner, and lessor" of the property subject to the ADA claim. Doc. 1 at 2, 9.

A plaintiff seeking injunctive relief pursuant to Title III of the ADA must also plausibly show that there is a "sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future" and that this threat of future injury is "real and immediate—as opposed to…merely conjectural or hypothetical." *Id.* at 1328-29 (quotations omitted).

Here, Plaintiff lists several architectural barriers on Defendant's premises and alleges that these barriers prevent Plaintiff's full and equal access to the facility. Doc. 1 at 10-14. Such allegations may sufficiently establish a "cognizable interest for purposes of standing." *Hoewischer v. Cedar Bend Club, Inc.*, 877 F. Supp. 2d. 1212, 1222 (M.D. Fla. 2012) (finding standing where a plaintiff's amended complaint listed barriers preventing full enjoyment of the defendant's facilities). Further, Plaintiff has sufficiently alleged a causal connection because the injury occurred on Defendant's premises, where the allegedly discriminatory barriers are located. *See Longhini v. J.U.T.A., Inc.*, 2018 WL 1305909, at *3 (M.D. Fla. Mar. 13, 2018) (finding a causal connection between the injury and the alleged conduct when the injury occurred at the defendant's property where the plaintiff encountered discriminatory barriers). Accordingly, Plaintiff has established the injury-in-fact and causation requirements to have standing.

Plaintiff must also establish that that his injury "will be addressed by a favorable decision." *Houston*, 733 F.3d at 1328. Where, as here, prospective relief is sought, Plaintiff must allege facts showing "a real and immediate threat of future injury." *Id.* at 1329. Courts have considered several nonexclusive factors when determining a plaintiff's intent to return and the likelihood of future discrimination, including: 1) the proximity of the defendant's business to the plaintiff's residence; 2) the plaintiff's past patronage of the defendant's business; 3) the definiteness of the plaintiff's plan to return; and 4) the frequency of plaintiff's travel near the defendant's business. *See id.* at 1327; *see also Hoewischer*, 877 F. Supp. 2d at 1222-23.

Regarding the proximity of the defendant's business to the plaintiff's residence, Plaintiff alleges that he resides in Palm Beach County and that Defendant's premises are in the Orlando area. Doc. 1 at 2.  Plaintiff is located approximately 188 miles away from Defendant's premises.[3] Accordingly, this factor weighs against Plaintiff's standing.  *See Longhini*, 2018 WL 1305909, at *7 (finding the proximity factor to weigh against plaintiff where defendant's property was located approximately 237 miles from plaintiff's residence); *see also Houston*, 733 F.3d at 1337 (noting that had plaintiff lived "hundreds of miles away from [defendant's premises] with no particular reason to return" it would weigh against standing).

Regarding past patronage, Plaintiff specifically identifies two visits to Defendant's premises on March 11, 2023, and August 29, 2023.  *Id.* at 3.  Plaintiff's attempt to return to Defendant's noncompliant premises after encountering architectural barriers supports the second factor to establish standing.  *See id.* at 1336 (finding support for a "real and immediate threat of future injury" where plaintiff visited the premises multiple times after encountering alleged architectural barriers).

Regarding a plan to return, Plaintiff asserts that he "fully intends" to return to Defendant's premises in both his individual capacity as a patron and as a tester ensuring Defendant's ADA compliance.  Doc. 1 at 5-6.  Plaintiff additionally states that he will "absolutely return" to Defendant's premises when Defendant enters an agreement to modify the premises or makes accommodations for the disabled.  *Id.* at 6-7.  However, a plaintiff's motivation as a tester is not a

---

[3] Although Plaintiff does not allege any facts to this distance, the Court calculated this distance through a Google Maps query of the distance between Plaintiff's address and the address of Defendant's premises, *see* Google Maps, www.maps.google.com (last visited May 30, 2024), and takes judicial notice of that fact. *See* Fed. R. Evid. 201(b)-(d); *see also Longhini*, 2018 WL 1305909, at n.4 (taking judicial notice of proximity between plaintiff's residence and defendant's premises for a standing analysis). The relevant addresses are drawn from Plaintiff's complaint and answers to court interrogatories.  Doc. 1 at 2; Doc. 6 at 1.

freestanding demonstration of a concrete plan to return and is considered alongside other facts showing an intent to return. *See Longhini*, WL 1305909, at \*4 ("[T]he tester motive has been recognized as legitimate, but a desire to return to test for ADA compliance has not been deemed sufficient, without more, to support standing."). Nevertheless, Plaintiff's assertion and demonstration of a specific interest in revisiting Defendant's premises as both a patron and as an ADA tester, evinced by his second visit on August 29, 2023, sufficiently establishes a plan to return. *See Lucibello v. McGinley*, 2008 WL 398981, at \*16 (M.D. Fla. Feb. 12, 2008) ("[T]he Court finds that Plaintiff's assertion of his continuing desire to access the Facility and inability to do so because of physical barriers is sufficient at this juncture to meet the standing requirements.").

Regarding the frequency of travel near Defendant's premises, Plaintiff states that despite residing in Palm Beach County, he frequently travels to the Orlando area where he visits places of public accommodation. Doc. 1 at 4-5. Given Plaintiff's history as an ADA tester and litigant, this assertion credibly supports the fourth factor to establish standing. *See Longhini*, 2018 WL 1305909, at \*4 (finding the plaintiff's assertion that he visits the Orlando area "many times a year," coupled with his "history as an ADA tester and track record of initiating ADA lawsuits," sufficient to establish the fourth standing factor).

On this record and taking the well-pled allegations as true, Plaintiff's factual allegations that he has visited Defendant's premises multiple times, frequently travels to the area, and plans to return as both a patron and a tester sufficiently support a real and immediate threat of future injury. Accordingly, the Court finds that Plaintiff has sufficiently established standing for this Court to have jurisdiction over Plaintiff's claim.

### d. Elements of the Claim

Plaintiff has the burden to address the elements of the cause of action and the specific, well-pled facts in the operative complaint that satisfy each of those elements.  "A plaintiff alleging Title III ADA discrimination must initially prove that (1) he is a disabled individual; (2) the defendants own, lease, or operate a place of public accommodation; and (3) the defendants discriminated against the plaintiff within the meaning of the ADA."  *Norkunas v. Seahorse NB, LLC*, 444 Fed. App'x. 412, 416 (citing 42 U.S.C. § 12182(a)).  "For alterations of premises, the ADA defines discrimination as 'a failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs.'"  *Id.* (citing 42 U.S.C. § 12183(a)(2)).

First, Plaintiff alleges that he is an individual with a disability that impairs his mobility and lists the medical conditions that are the cause of his disability.  Doc. 1 at 2-3; Doc. 6 at 2.  The Court finds this sufficient to allege the first element of the ADA claim.  *See, e.g.*, *Cohan v. Carmel Mgmt. Grp. LLC*, 2024 WL 1994265, at *3 (M.D. Fla. May 6, 2024).

Second, Plaintiff alleges that "'[u]pon information and belief,' Defendant is the 'lessee, operator, owner, and lessor'" of the property subject to the ADA claim and that these premises are a place of public accommodation.  Doc. 1 at 2, 9.  However, judges in this district have held that "[u]nsupported, conclusory allegations of ownership fail to state a claim under the ADA." *Bell v. FTMC, LLC*, 2018 WL 4565745, at *2 (M.D. Fla. Sept. 24, 2018); *see Tidwell v. S. Petro Holding LLC*, 2019 WL 2173838, at *4 (M.D. Fla. May 20, 2019) (finding an unsupported allegation that defendant "is the owner, lessee, lessor and/or operator" of a property insufficient to state an ADA claim); *see also Cohan v, Sparkle Two, LLC*, 309 F.R.D. 665, 668 (M.D. Fla. July 28, 2015) (finding that plaintiff's unsupported allegation that "upon information and belief" defendant is the

"lessee, operator, owner and lessor" of the premises subject to the suit was insufficient to state an

ADA claim).  Here, Plaintiff similarly fails to sufficiently plead facts showing that Defendant owns

or leases a place of public accommodation subject to the ADA's requirements, so Plaintiff fails to

state a claim under the ADA. [4]

Additionally, Plaintiff fails to sufficiently allege the third element that Defendant

discriminated against Plaintiff within the meaning of the ADA.  Plaintiff fails to plead whether the

premises in question is a "pre-existing" building as defined under the ADA.[5]  *See Parks v. RS*

*Equity Holdings LLC*, 2020 WL 1820578, at \*11 (M.D. Fla. Apr. 10, 2020); *see also Cohan* 2024

WL 1994265, at \*3-4.  Plaintiff only conditionally pleads that "[t]o the extent the Premises, or

portions thereof, existed and were occupied prior to January 26, 1992, [Defendant] has been under

a continuing obligation to remove architectural barriers at the Premises where removal was readily

achievable[.]" Doc. 1 at 14.  Likewise, Plaintiff states that "[t]o the extent the Premises, or portions

thereof, were constructed for occupancy after January 26, 1993, [Defendant] was under an

obligation to design and construct such Premises such that it is readily accessible to and usable by

individuals with disabilities[.]" *Id*.  The Eleventh Circuit has explained the standard to be applied

to pre-existing buildings as follows:

> Congress enacted the ADA on January 25, 1993.  After this date, facilities have to
> meet exacting design and implementation standards to be in compliance with the
> ADA.  The ADA imposes different requirements on the owners and operators of
> facilities that existed prior to its enactment date.  For those facilities, the ADA states

---

[4] While denying without prejudice another motion for default judgment by Plaintiff in another
case, the undersigned stated without discussion in dicta that a similar allegation was sufficient.
*See Cohan*, 2024 WL 1994265, at \*3, \*9-12 (finding that plaintiff failed to sufficiently plead
whether defendant's premises were a "pre-existing building" under the ADA and whether
alterations to defendant's premises were "readily achievable").  The undersigned is now persuaded
by the substantial authority finding that the allegations here are not sufficient.

[5] A "pre-existing building" under the ADA is one that existed on or before January 25, 1993.  *See*
42 U.S.C. § 12183(a).

that discrimination includes a private entity's "failure to remove architectural barriers ... where such removal is readily achievable."   42 U.S.C. § 12182(b)(2)(A)(iv).  Where removal is not "readily achievable," failure of the entity to make goods, services and facilities "available through alternative methods if such methods are readily achievable," may constitute discrimination under the ADA.  42 U.S.C. § 12182(b)(2)(A)(v).

The ADA defines "readily achievable" as "easily accomplishable and able to be carried out without much difficulty or expense."  42 U.S.C. § 12181(9).  Congress included in the ADA factors to be considered in evaluating whether removal of a barrier is "readily achievable."  These factors are (1) nature and cost of the action; (2) overall financial resources of the facility or facilities involved; (3) number of persons employed at such facility; (4) effect on expenses and resources; (5) impact of such action upon the operation of the facility; (6) overall financial resources of the covered entity; (7) overall size of the business of a covered entity; (8) the number, type, and location of its facilities; (9) type of operation or operations of the covered entity, including composition, structure, and functions of the workforce of such entity; and (10) geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.  *Id.*

   ...

[P]laintiff has the initial burden of production to show (1) that an architectural barrier exists; and (2) that the proposed method of architectural barrier removal is "readily achievable," i.e., "easily accomplishable and able to be carried out without much difficulty or expense" under the particular circumstances of the case. *Colorado Cross* [*Disability Coalition v. Hermanson Family Ltd.*], 264 F.3d [999,] 1007 [(10th Cir. 2001)].  If the plaintiff meets this burden, the defendant then bears the ultimate burden of persuasion that barrier removal is not "readily achievable." *Id.* at 1002-03; see also *White v. Cinemark USA, Inc.*, 2005 U.S. Dist. LEXIS 42134, 2005 WL 1865495 at *6 (E.D. Cal. 2005); *Access Now, Inc. v. So. Fla. Stadium Corp.,* 161 F. Supp. 2d 1357, 1363 (S.D. Fla. 2001); *Ass'n for Disabled Americans, Inc. v. Claypool Holdings LLC*, 2001 WL 1112109 at *26 (S.D. Ind. 2001); *Pascuiti v. New York Yankees*, 87 F. Supp. 2d 221, 1999 WL 1102748 at *4 (S.D.N.Y. 1999).

*Garthright-Dietrich v. Atlanta Landmarks, Inc.*, 452 F.3d 1269, 1272-74 (11th Cir. 2006).  Thus, given Plaintiff's failure to definitively allege whether the property is a "pre-existing building" under the ADA, the Court cannot determine what standard to apply, which, in turn, inhibits the Court from determining whether Plaintiff has stated a claim against Defendant.

Even had Plaintiff sufficiently alleged that Defendant's premises were constructed prior to January 25, 1993, such that the Court could apply the "readily achievable" standard, Plaintiff has

not yet sufficiently alleged that removal of the architectural barriers is readily achievable.  Plaintiff only alleges a conclusory statement that removal of the barriers is readily achievable.  Doc. 1 at 14.[6]   However, mere allegation of the "legal conclusion that removal of a barrier is readily achievable, without more, is insufficient to establish that removal, is, in fact, readily achievable." *Tidwell*, 2019 WL 2173838, at *5 (quoting *Larkin v. Cantu LLC*, 2017 WL 2684422, at *5 (M.D. Fla. May 31, 2017); *see also Stringham v. Apopka Shopping Ctr.*, LLP, 2013 WL 6891577, at *1 (M.D. Fla. Dec. 31, 2013) (dismissing ADA complaint in part because plaintiff did not provide factual support for his allegation that removal of barriers would be "readily achievable").  As such, Plaintiff's complaint fails to sufficiently plead facts establishing the third element of an ADA claim.

## IV.   CONCLUSION

Accordingly, it is **ORDERED** that the Motion (Doc. 11) be **DENIED without prejudice.**

Ordered in Orlando, Florida on June 10, 2024.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE

---

[6] Plaintiff additionally submits an affidavit from an ADA expert that repeats Plaintiff's conclusory statement stating that modification of the identified non-compliant barriers is readily achievable. Doc. 11-3 at 3.  However, such a statement does not support Plaintiff's request for default when it largely recites Plaintiff's allegations without providing an additional basis to show that removal of the barriers is readily achievable. *See Tidwell*, 2019 WL 2173838, at *2 (citing *Larkin v. Cantu LLC*, 2017 WL 2684422, at *5 (M.D. Fla. May 31, 2017).  Additionally, "the Court may not look to evidence extraneous to the allegations of the complaint in determining liability because a defendant only admits the well-pleaded facts in the complaint when a default is entered against it." *Id.* at n.1 (quoting *Larkin*, 2017 WL 2684422, at *4 n.6).